```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                     JACKSON DIVISION
```

TERRY S. PRIDEAUX                                      PLAINTIFF

VS.                              CIVIL ACTION NO. 3:10CV565 TSL-MTP

TYSON FOODS, INC.                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Tyson Foods, Inc. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Terry S. Prideaux has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes the motion is well taken and should be granted.

Plaintiff Terry Prideaux first became employed by Tyson in September 2003, when Tyson purchased the Carthage facility of Choctaw Maid, where Prideaux was employed in the human resources department. In March 2007, Tyson terminated Prideaux's employment. Following his termination, Prideaux filed suit against Tyson, alleging he was terminated on account of his race in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981; his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*; and in retaliation for having complained on behalf of Tyson employees of violations

of the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.* In the course of the litigation, plaintiff confessed his race and age discrimination claims, and in March 2009, the case was tried on his claim of retaliation, which resulted in a jury verdict for Tyson.

In the meantime, shortly following his termination from Tyson, plaintiff had become employed by Central Industries, Inc. as the Environmental and Safety Manager for its facility in Forest, Mississippi. However, in December 2008, while Prideaux's first lawsuit against Tyson was pending, Tyson purchased Central Industries' Forest facility. Soon thereafter, in February 2009, plaintiff was informed that he would not be retained. His employment with Tyson was subsequently terminated, effective March 13, 2009.

Prideaux filed the present action on June 29, 2010 alleging that his termination in March 2009 was on account of his age and gender, in violation of the ADEA and Title VII, respectively, and further asserting a retaliation claim under the FMLA.[1] In response to Tyson's summary judgment, plaintiff has confessed his FMLA claim, leaving for consideration the motion as to his age and gender discrimination claims.

---

[1] Plaintiff filed this action in the Circuit Court of Hinds County, Mississippi. The case was timely removed to this court on the basis of federal question jurisdiction under 28 U.S.C. § 1331.

Tyson contends that summary judgment is in order since plaintiff, who admits he has no direct evidence of discrimination, has failed to come forward with sufficient evidence to establish a prima facie case of age or gender discrimination or, assuming arguendo that he could establish a prima facie case, to demonstrate that Tyson's articulated reason for his termination is pretext for unlawful discrimination.

In the absence of direct evidence of discriminatory intent, circumstantial evidence is examined using the burden-shifting framework set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under the McDonnell Douglas framework, the plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case. Id. at 802. Once the prima facie case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. Id. If the employer meets that burden, the presumption of discrimination dissipates, and the employee then has the ultimate burden of proving intentional discrimination. Id. Under Title VII, to sustain this burden, the plaintiff must prove that (1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed motive alternative). Davis v.

3

Farmers Ins. Exchange, 372 Fed. Appx. 517, 519, 2010 WL 1404000, 2 (5th Cir. 2010) (citations omitted).  However, the ADEA does not authorize a mixed-motives age discrimination claim, so to prove pretext, the plaintiff must prove that age was the "but-for" cause of the challenged employment action.  Id. (citation omitted).

In the case at bar, the parties appear to disagree as to the elements of plaintiff's prima facie case.  Tyson cites the elements applicable in the case of a failure to hire, which require proof that plaintiff, a member of a protected class, applied but was rejected for an open position for which the employer was seeking applicants, and that the employer selected someone outside the protected class or continued seeking applicants with plaintiff's qualifications.  See Daves v. Payless Cashways, Inc., 661 F.2d 1022, 1025 (5th Cir. 1981).  Tyson submits that plaintiff cannot show he was rejected for an "open" position or that someone outside his protected class was selected for an "open" position, since there never was an "open" position for which Tyson sought applicants since Lyle, as "Safety Supervisor" at Central Industries, was already performing the Tyson job of "Safety Manager" and was merely given the Tyson job title commensurate with her existing job duties.

In his response, plaintiff cites the elements of a prima facie case applicable in the case of an alleged discriminatory discharge, i.e., that he was in a protected class, qualified for the job, suffered an adverse employment action and was replaced by

4

someone outside the protected class. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

The court need not resolve the issue of the proper characterization of plaintiff's claim for purposes of identifying the elements of his prima facie case, for in the court's opinion, regardless of whether he could establish the elements of any potentially applicable prima facie case, he has not presented sufficient evidence to support a reasonable finding that Tyson's legitimate, nondiscriminatory reason for its challenged employment decision was pretext for age or gender discrimination.

Tyson explains in its motion, and has presented ample supporting evidence to show that following its acquisition of Central Industries' Forest facility, it began the process of converting the facility to a standard Tyson facility.  As part of this process, in January 2009, it began evaluating all personnel positions at the Forest facility, analyzing the job duties formerly performed by personnel under the corporate structure of Central Industries and matched those duties to equivalent jobs at a typical Tyson facility.  The goal of the process was to identify the positions from Central Industries that did and those that did not "match" positions within the Tyson business model.  As part of this process, Steve Patrick, Tyson's Director of Environmental Health & Safety Operations, evaluated the personnel within the environmental health and safety department, and, in conference

with Gregg Uecker, Senior Vice President of Specialty Products for Tyson, determined the best operational structure for the department.

Tyson explains that its corporate structure included a "Safety Manager" position, and that after evaluating the job duties formerly performed by each employee at Central Industries and comparing it with the duties performed by a Tyson "Safety Manager," it decided that Melissa Lyle, the "Safety Supervisor" at Central Industries, matched the duties of a Tyson "Safety Manager." Therefore, a decision was made to adjust her job title from "Safety Supervisor" to "Safety Manager" to match Tyson's appellation for what was largely the same position.

Tyson further explains that there was no comparable position in its corporate structure for an Environmental and Safety Manager, and thus this position, which was then held by Prideaux, was eliminated, along with several others, resulting in the termination of a number of employees, including females and persons under forty years of age.

Finally, Tyson states that its corporate model did provide for a "Complex Environmental Manager," for which there was no counterpart at Central Industries. It created such a position for the Forest facility, and encouraged plaintiff to apply; and while he did, in fact, apply for the position, Tyson ultimately selected an admittedly more qualified candidate for the position.

6

As Tyson has articulated a legitimate, nondiscriminatory reason for its decision to retain Lyle and discharge plaintiff, the burden is on plaintiff to bring forth evidence to establish either that the proffered reason is unworthy of credence, or that a discriminatory reason motivated Tyson's decision. See Jackson v. Cal-Western Packing Corp., 602 F.3d 374, 378-79 (5th Cir. 2010). Plaintiff must do more than "cast doubt on whether [the employer] had just cause for its decision;" he must also "show that a reasonable fact-finder could conclude that [the employer's] reasons are unworthy of credence." Id.  Plaintiff has failed to sustain this burden to show that Tyson's articulated reason was pretextual or that its decision was motivated in any part by his gender or age.

In his response, plaintiff appears to suggest that Tyson's explanation is not worthy of credence because Tyson has failed to adequately explain the details underlying its putative conclusion that Lyle's Central Industries job as "Safety Supervisor" was the equivalent of the Tyson "Safety Manager" position.  In this vein, he argues that Tyson's articulated reason is "quite lacking in explaining how duties changed with regard to [plaintiff]," and he notes that while Tyson admits that part of his former position was safety manager, it "very noticeably fails to identify what job responsibilities [plaintiff] had for the safety manager portion of his job or who is not performing those job responsibility [sic]." Plaintiff further asserts that when Lyle became Tyson's "Safety

7

Manager," she was assigned the duties he had formerly performed in the safety manager aspect of his Central Industries position, and in fact, was given a pay raise, as well, which he contends indicates the Tyson "Safety Manager" position was not merely Tyson's "match" for or counterpart to Lyle's Central Industries' "Safety Supervisor" position but was instead a new position that was, in fact, a promotion for her.

While plaintiff's suggests a contrary view, Tyson clearly is not required to *prove* its legitimate reason; it need only put forth evidence of that reason, which it has done. See Edwards v. Wal-Mart Stores, Inc., 2001 WL 43546, 3 (5th Cir. 2001).  And in response, plaintiff has failed to present sufficient competent evidence from which a trier of fact could reasonably conclude that Tyson's reason is false or to otherwise show that the decision was motivated by a discriminatory animus.

Essentially, plaintiff challenges Tyson's business judgment that Lyle's job duties as "Safety Supervisor" most closely approximated the duties of a Tyson "Safety Manager."  However, even assuming plaintiff had presented competent evidence that Lyle, as a Tyson "Safety Manager," had additional duties beyond those she had as a Central Industries "Safety Supervisor,"[2] he has

---

[2] The only evidence plaintiff has offered in support of this assertion is his own testimony that Lyle told him that she would be taking over his former safety duties.  Such hearsay evidence is not competent summary judgment evidence. See Martin v. John W. Stone Oil Distributor, Inc., 819 F.2d 547, 549 (5th Cir. 1987) (court may not properly consider hearsay evidence in affidavits and depositions); Fed. R. Civ. P. 56(e) ("affidavits

8

not shown what duties either position entailed and has otherwise presented no evidence from which one might reasonably find that Tyson did not, in fact, determine that Lyle's duties in her position at Central Industries, if not identical to, were the most comparable to those of a Tyson "Safety Manager."[3]  Plaintiff has offered no evidence otherwise tending to show that plaintiff's gender or age played any role in Tyson's decision.

For these reasons, the court concludes that Tyson's motion is well taken.  Therefore, it is ordered that Tyson's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this   6th    day of October, 2011.


                                    /s/Tom S. Lee
                                    UNITED STATES DISTRICT JUDGE

---

shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence ...").

[3]  Tyson explains that any pay increase Lyle received after the acquisition of Central Industries by Tyson would have solely been an effort to ensure that she received the same pay as all other Tyson "Safety Managers" throughout the company.  The fact that Tyson may have paid its "Safety Managers" more than Central Industries paid its "Safety Supervisors" for performing essentially the same duties does not suggest that the positions were not equivalent or comparable.